IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ROOSEVELT HUNT, JR.,

      Plaintiff,

v.                                                        Case No. 25-1209-JWB

TRUE SKY FEDERAL CREDIT UNION,

      Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendant's motion to dismiss. (Doc. 18.) The motion has been fully briefed and is ripe for decision. (Docs. 19, 20, 22.) The motion is GRANTED IN PART and TAKEN UNDER ADVISEMENT IN PART for the reasons stated herein.

**I.    Facts**

The facts set forth herein are taken from the amended complaint and the exhibits attached thereto. (Doc. 15.) Plaintiff obtained a car loan from Defendant for his 2020 Toyota Camry. Plaintiff also had deposit accounts with Defendant in excess of $28,000 during the relevant time period. (*Id.* ¶ 11.) On December 8, 2023, Plaintiff traded in his vehicle to CarMax. CarMax agreed to pay off the loan balance with Defendant. On January 5, 2024, CarMax issued a check to Defendant on the loan. The check, however, did not cover the entire balance owed and there was a shortfall of $45.77. (*Id.* ¶ 7.) In February, Plaintiff contacted Defendant who told Plaintiff that the account was late. On March 25, CarMax issued a supplemental payment of $290.65. This was deposited on April 2 and it was sufficient to cover the loan in full. (*Id.* ¶ 10.)

Although the loan was paid off in April 2024, Defendant began reporting to TransUnion credit bureau that Plaintiff's account was 30-days delinquent. (*Id.* ¶ 14.) In January 2025, Plaintiff

1

discovered the derogatory tradeline during a mortgage application. He then gathered records regarding the payoff amounts. Plaintiff alleges that he was denied credit from multiple banks as a result. These actions occurred in January, April, and June 2025. (Docs. 15-3, 15-4, 15-5.) Plaintiff repeatedly complained to Defendant that the loan was paid off and the reporting was inaccurate but it was not corrected. On July 3, Plaintiff submitted a written dispute to TransUnion. (Doc. 15 ¶ 17.) On or about August 12, the tradeline was corrected.

Plaintiff filed this action asserting a violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(b), a claim for breach of contract, and a claim for breach of the duty of good faith. Defendant now moves to dismiss.

## II.     Standard

In order to withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).

Because Plaintiff is proceeding pro se, the court is to liberally construe his filings. *United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009). However, liberally construing filings does not mean supplying additional factual allegations or constructing a legal theory on Plaintiff's behalf. *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

## III.    Analysis

### A.  FCRA Claim

Defendant argues that Plaintiff has not plausibly stated a claim under the FCRA. The FCRA obligates furnishers of information like Defendant to provide accurate information to consumer reporting agencies, like TransUnion. 15 U.S.C. § 1681s–2(a). After receiving notice of a dispute from TransUnion, a furnisher is to "(1) investigate the disputed information; (2) review all relevant information provided by the CRA; (3) report the results of the investigation to the CRA; (4) report the results of the investigation to all other CRAs if the investigation reveals that the information is incomplete or inaccurate; and (5) modify, delete, or permanently block the reporting of the disputed information if it is determined to be inaccurate, incomplete, or unverifiable." *Pinson v. Equifax Credit Info. Servs., Inc.*, 316 F. App'x 744, 750–51 (10th Cir. 2009) (quoting § 1681s–2(b)). Once receiving such a notice, furnishers must "complete all investigations, reviews, and reports . . . before the expiration of the period under section 1681i(a)(1)" which is 30 days. § 1681s-2(b)(2). Notably, these duties only arise after furnishers like Defendant receive notice from a CRA and not notice directly from the consumer. *Pinson*, 316 F. App'x at 751. As such, Defendant's failure to take action after receiving verbal notice from Plaintiff is not actionable under the FCRA.

In order to state a claim under § 1681s–2(b)(1), Plaintiff must plausibly allege: (1) he notified a credit reporting agency ("CRA") of a dispute; (2) the CRA notified Defendant, who was the furnisher of the information of the dispute; and (3) after notification, Defendant failed to adequately investigate. *Keller v. Bank of Am., N.A.*, 228 F. Supp. 3d 1247, 1255 (D. Kan. 2017). Plaintiff has alleged that he notified a CRA of the dispute on July 3, 2025. Plaintiff also alleged that Defendant failed to adequately investigate by failing to delete the tradeline within 30 days.

Defendant first argues that Plaintiff has failed to plausibly allege that it was notified of the dispute and the contents of that notification. In response, Plaintiff asserts that Defendant was

3

notified by July 6. (Doc. 20 at 2.) Reviewing Plaintiff's exhibits to his complaint, he has attached emails from TransUnion reflecting that he submitted a dispute on July 3. On July 6, TransUnion informed him that they had contacted Defendant regarding the dispute. (Doc. 15-9.) Therefore, at this stage of the proceedings the court finds that Plaintiff has plausibly alleged a violation of the FCRA. Plaintiff's complaint and exhibits reflect that Defendant was notified of Plaintiff's dispute challenging the negative tradeline on or before July 6 and Defendant did not investigate the tradeline within 30 days as required by the FCRA.

Finally, Defendant asserts that Plaintiff has failed to sufficiently allege an injury that occurred during the time frame at issue: July 3 to August 12. Plaintiff must have an injury in fact to have standing to bring his claim. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Plaintiff has alleged that he was injured due to the denial of credit, credit score deduction, increased loan interest rates, and loss of favorable credit terms. (Doc. 15 ¶ 31.) Plaintiff's factual allegations and exhibits, however, relate to a time period prior to July 3. (*Id.* ¶ 24, Doc. 15-3, 15-4, 15-5.) In his response to the motion to dismiss, Plaintiff asserts that he has suffered injuries during the requisite time period. (Doc. 20 at 2.) Therefore, the court will allow Plaintiff to amend his complaint to allege injuries that occurred in the time period relevant to his FCRA claim. Should he fail to file an amended complaint, his complaint will be dismissed without prejudice for lack of standing.

### B. Breach of Contract and Breach of the Duty of Good Faith

Plaintiff has also alleged breach of contract and a separate claim of breach of the duty of good faith. The court will address these claims together as a claim of breach of duty of good faith is simply another theory of breach of contract. To determine what law applies to Plaintiff's state law breach of contract claim, the court applies the substantive law of the forum state, including its

conflict-of-laws rules. *Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1170 (10th Cir. 2010). Kansas "follows the general rule that the law of the state where the [ ] contract is made controls." *Safeco Ins. Co. of America v. Allen*, 941 P.2d 1365 (1997). However, "[w]here the parties to a contract have entered an agreement that incorporates a choice of law provision, Kansas courts generally effectuate the law chosen by the parties to control the agreement." *Brenner v. Oppenheimer & Co.*, 44 P.3d 364, 375 (Kan. 2002). Here, the agreement states that the law of Defendant's headquarters will apply. (Doc. 15-7 at 3.) Both parties agree that Defendant's headquarters are in Oklahoma and that Oklahoma law applies. Therefore, the court will look to Oklahoma law.[1]

To prevail on his claim of breach of contract, Plaintiff must show "(1) formation of a contract; (2) breach of the contract; and (3) damages as a result of that breach." *Morgan v. State Farm Mut. Auto. Ins. Co.*, 488 P.3d 743, 748 (Okla. 2021). Here, Plaintiff alleges that Defendant breached the loan agreement by failing to apply the funds in his deposit account to his outstanding car loan. In moving to dismiss, Defendant argues that it does not have a duty under the agreement to apply the deposit funds to the outstanding loan balance; rather, the provisions at issue are discretionary. (Doc. 19 at 7–8.) Plaintiff acknowledges that the duties he referred to in his amended complaint are discretionary and fails to otherwise respond to Defendant's argument in support of dismissal.[2] (Doc. 20 at 3.) Plaintiff also fails to identify a provision in the loan agreement that Defendant has allegedly breached. Therefore, his claim of breach of contract is subject to dismissal as Plaintiff has not plausibly alleged that Defendant breached the loan agreement.

---

[1] The court notes that application of Kansas law in this case would also result in dismissal of the breach of contract claims.
[2] Although Plaintiff's argument section is titled "Plaintiff's contract claims are properly pled," Plaintiff only addresses his claim of breach of the implied duty of good faith. (Doc. 20 at 3.)

Next, Plaintiff alleges that Defendant breached the contract by failing to act in good faith in performing the loan agreement. Defendant argues that this claim is subject to dismissal because the provisions at issue are discretionary and it cannot breach the duty of good faith by not undertaking an action it did not agree to take.

Oklahoma courts have recognized that "[e]very contract in Oklahoma contains an implied duty of good faith and fair dealing." *Wathor v. Mutual Assur Adm'rs, Inc.*, 2004 OK 2, ¶ 5, 87 P.3d 559, 561. A party may not act in a way that would injure the other party's reasonable expectations or impair the right of the other to receive the contractual benefits. *First Nat'l Bank & Trust Co. of Vinita v. Kissee*, 1993 OK 96, ¶ 24, 859 P.2d 502. However, "the obligation of good faith cannot be employed to override express contract terms or to obligate a party to accept additional terms or a material change in the contract's terms." *Walker v. First Nat'l Bank of Med. Lodge*, 129 F. App'x 411, 414 (10th Cir. 2005). Further, "the concept of good faith becomes irrelevant in the interpretation of a contractual provision which grants 'uncontrolled discretion' to one of the parties." *Devery Implement Co. v. J.I. Case Co.*, 944 F.2d 724, 729 (10th Cir. 1991).

In response to Defendant's motion, Plaintiff agrees that Defendant was not required to use the deposit funds for payment of his car loan. Plaintiff asserts that Oklahoma "courts hold that when a contract grants one party discretionary authority, that discretion must be exercised in good faith and not in a manner that frustrates the justified expectations of the other party." (Doc. 20 at 3.) Plaintiff cites to *Hall v. Farmers Ins. Exchange*, 713 P.2d 1027, 1029 (Okla. 1985). *Hall* involved the termination of an employment contract and did not stand for the general proposition that Plaintiff suggests.[3] Rather, the Oklahoma Supreme Court held that the defendant in that case could not terminate an agreement in bad faith to deprive its agent of fees. *Hall*, 713 P.2d at 1030.

---

[3] Plaintiff also cites to a non-existent case in support of his arguments on the FCRA claim. (Doc. 20 at 1) (citing to *Howard v. CitiMortgage, Inc.*, 2019 WL 1401348 (D. Kan. Mar. 28, 2019)). There is no case with such a caption in

Plaintiff's remaining arguments are entirely conclusory. Plaintiff also fails to identify the provisions at issue that were breached by Defendant's conduct. The provisions allowing Defendant to set off its losses when Plaintiff defaults are discretionary, i.e. "we may apply these shares and deposits to the payment of all sums due at the time of default." (Doc. 15-7 at 3.) Moreover, they are for the benefit of Defendant and not Plaintiff. Plaintiff makes no colorable argument as to how Defendant's actions here breached the agreement by failing to act in good faith. In the absence of Oklahoma law in support of his claim that Defendant's actions were a violation of its duty to act in good faith, the court will not read the agreement to require Defendant to set off funds from Plaintiff's deposit account to pay the outstanding balance on his car loan.

## IV.  Conclusion

Defendant's motion to dismiss (Doc. 18) is GRANTED IN PART and TAKEN UNDER ADVISEMENT IN PART. Plaintiff's claims of breach of contract are dismissed. Defendant's motion is taken under advisement as to Plaintiff's FCRA claim. Plaintiff may file an amended complaint setting for his FCRA claim on or before March 1, 2026 to address the deficiencies identified herein. Failure to do so will result in a dismissal without further notice.

IT IS SO ORDERED.  Dated this 25th day of February, 2026.

                                                         __s/ John W. Broomes_____
                                                         JOHN W. BROOMES
                                                         CHIEF UNITED STATES DISTRICT JUDGE

---

Westlaw and Plaintiff has not provided a case number for the court to locate the case in its records. Since the filing of Plaintiff's brief, this court has entered a standing order on the use of Artificial Intelligence ("AI") in court filings. Standing Order 26-01 (In Re: Use of Artificial Intelligence In Preparing Court Filings). This order requires a litigant to review and verify the accuracy of all content filed with the court that was drafted or assisted using an AI tool. Should Plaintiff violate this standing order in subsequent filings, he can be subject to sanctions as set forth in the standing order.