IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ROOSEVELT E HUNT JR., | ) |
| | ) |
|      Plaintiff *pro se*, | ) |
| v. | ) Case 6:25-cv-1209-JWB-BGS |
| | ) |
| | ) |
| TRUE SKY FEDERAL CREDIT UNION | ) |
| | ) |
|      Defendant. | ) |

**AMENDED COMPLAINT (FCRA ONLY)**

**JURISDICTION AND VENUE**

1. This Court has jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p (FCRA).

2. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events occurred in this District, where Plaintiff resides and suffered harm.

**PARTIES**

3. Plaintiff Roosevelt E. Hunt, Jr. resides at 7329 E. Gabriel St., Bel Aire, Kansas 67226.

4. Defendant True Sky Federal Credit Union is a federally chartered credit union that regularly furnishes consumer credit information to nationwide consumer reporting agencies.

**FACTUAL BACKGROUND**

5. On December 8, 2023, Plaintiff traded in his 2020 Toyota Camry, which had been financed through Defendant. As part of the trade-in, CarMax agreed to pay off the True Sky loan.

6. CarMax initially mailed the December 2023 payoff check to the wrong address; it did not reach Defendant. On January 5, 2024, CarMax issued a replacement payoff check.

7. On or about January 12, 2024, Defendant deposited the January replacement check but later claimed a shortfall of approximately 45.77 dollars.

8. In February 2024, Plaintiff contacted Defendant to clarify the payoff status and explained the trade-in and CarMax replacement check. Defendant's representative repeatedly stated only that the account was late and did not meaningfully investigate the payoff history or apparent shortfall.

9. On March 25, 2024, CarMax issued an additional supplemental payment of approximately 290.65 dollars. Defendant deposited this payment on April 2, 2024.

10. By April 2024, Defendant had received sufficient funds from CarMax to satisfy the loan in full.

11. During the same period, Plaintiff maintained deposits at True Sky in excess of 28,000 dollars. Under the parties' Loan and Security Agreement, Defendant had a consensual lien on deposited funds, cross-collateralization, and a contractual right of setoff authorizing application of those funds to any obligations owed.

12. Defendant also retained title and other collateral protections arising from the underlying auto loan and Security Agreement.

13. Despite having full payoff from CarMax by April 2024 and contractual remedies to cure any nominal deficiency, Defendant chose not to resolve the alleged 45.77 dollar balance.

14. Instead, beginning in or around April 2024, Defendant began furnishing Plaintiff's account as 30-days delinquent to TransUnion and continued reporting derogatory information for more than fifteen consecutive months.

15. Plaintiff encountered denials and adverse actions from multiple lenders, including U.S. Bank, Meritrust Credit Union, and an adverse mortgage-related inquiry by Xactus LLC, which he attributes to Defendant's derogatory reporting.

16. In January 2025, Plaintiff discovered the derogatory True Sky tradeline during a mortgage application and promptly gathered records reflecting CarMax's payoff and supplemental payment.

17. On July 3, 2025, Plaintiff submitted a written dispute to TransUnion concerning Defendant's inaccurate reporting, explaining that the auto loan had been paid in full and that the 30-day delinquency being reported was inaccurate.

18. On or about July 6, 2025, TransUnion notified Defendant True Sky Federal Credit Union of Plaintiff's dispute of the derogatory tradeline and requested that Defendant investigate the disputed information.

19. After receiving notice of Plaintiff's dispute from TransUnion on or about July 6, 2025, Defendant failed to conduct a reasonable investigation and failed to correct or delete the inaccurate 30-day delinquency tradeline within 30 days, as required by 15 U.S.C. § 1681s-2(b). The erroneous derogatory tradeline remained on Plaintiff's TransUnion credit report through at least August 12, 2025.

20. On July 10, 2025, while the inaccurate True Sky tradeline was still reporting and suppressing his TransUnion credit score, Plaintiff applied for a credit card with JP Morgan Chase Bank and was denied credit. This denial appears on Plaintiff's TransUnion credit file and was caused in whole or in part by the inaccurate 30-day-late reporting by Defendant.

21. During the period from July 3 through approximately August 12, 2025, the inaccurate True Sky tradeline continued to depress Plaintiff's TransUnion credit score below the level it would have been if the loan had been reported accurately as paid in full and current. Plaintiff later observed that his TransUnion score increased after the derogatory tradeline was finally removed or corrected, confirming that the erroneous reporting had suppressed his score during this time.

22. At the same time, Plaintiff and his wife were actively considering refinancing their existing mortgage and/or purchasing a new home. They had accumulated over 100,000 dollars in equity in their current home, and Plaintiff was working with a realtor and viewing homes with the intent of either refinancing or upgrading to a different property once his credit profile reflected his true creditworthiness.

23. Because of Defendant's failure to timely correct the inaccurate tradeline after notice from TransUnion, Plaintiff reasonably believed that additional applications for credit during July–August 2025 would be futile or would further harm his credit through additional hard inquiries while the derogatory mark remained. As a result, Plaintiff refrained from pursuing additional mortgage or other credit applications he otherwise would have sought in connection with refinancing or purchasing a new home, causing him to delay those plans and lose the opportunity to shop for favorable credit terms during that period.

24. Between July 3 and August 12, 2025, Plaintiff also suffered emotional distress, anxiety, and frustration knowing that his credit report contained false negative information, that his TransUnion credit score was being unfairly suppressed, and that this was interfering with his ability to obtain credit and move forward with refinancing or purchasing a home together with his wife. Plaintiff spent time and effort monitoring his credit, communicating with TransUnion, and waiting for a correction that did not occur within the statutory 30-day period, all as a direct result of Defendant's failure to comply with its duties under the FCRA.

25. On or about August 12, 2025, more than thirty days after the dispute, the True Sky tradeline was finally corrected. After the inaccurate tradeline was corrected and his score improved, Plaintiff was later able to obtain credit that he could not reasonably

pursue while the derogatory tradeline remained. This before-and-after change further demonstrates that Defendant's failure to timely investigate and correct the tradeline caused Plaintiff concrete injury during the July 3–August 12, 2025 timeframe.

26. Prior to and at the time of receiving notice from TransUnion on or about July 6, 2025, Defendant possessed records reflecting that (a) it had deposited the January 2024 CarMax payoff check, (b) it had deposited the March 2024 supplemental payment, and (c) Plaintiff had previously contacted Defendant regarding the payoff status of the loan. Defendant therefore had access to all information sufficient to determine whether the continued reporting of a 30-day delinquency was accurate.

27. Despite having this information in its own records, Defendant failed to conduct a reasonable investigation after receiving notice from TransUnion and failed to timely correct or delete the inaccurate 30-day delinquency reporting within the period required by 15 U.S.C. § 1681s-2(b).

**COUNT I – FAIR CREDIT REPORTING ACT (15 U.S.C. § 1681s-2(b))**

28. Plaintiff incorporates paragraphs 1–27 as though fully set forth herein.

29. Defendant True Sky Federal Credit Union is a "furnisher" of information to consumer reporting agencies within the meaning of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2.

30. On July 3, 2025, Plaintiff notified TransUnion, a consumer reporting agency, that the True Sky tradeline reporting a 30-day delinquency on his auto loan was inaccurate because the loan had been paid in full. TransUnion, in turn, notified Defendant of Plaintiff's dispute on or about July 6, 2025.

31. After receiving notice of the dispute from TransUnion, Defendant had a duty under 15 U.S.C. § 1681s-2(b) to: (1) conduct a reasonable investigation of the disputed information; (2) review all relevant information provided by the consumer reporting agency; (3) report the results of its investigation to TransUnion; and (4) if the information was found to be inaccurate or incomplete, modify, delete, or permanently block the reporting of the disputed information within the 30-day period prescribed by the FCRA.

32. Defendant violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation, by failing to review all relevant information regarding Plaintiff's payoff, and by failing to timely modify, delete, or block the inaccurate 30-day-late reporting within 30 days after receiving notice of Plaintiff's dispute from TransUnion.

33. As a direct and proximate result of Defendant's violations of § 1681s-2(b), Plaintiff suffered concrete injuries, including but not limited to:

    a. denial of credit on or about July 10, 2025, when JP Morgan Chase Bank rejected his credit-card application while the inaccurate True Sky tradeline was still reporting;

    b. suppression of his TransUnion credit score between July 3 and approximately August 12, 2025;

    c. loss of credit opportunities and delay in pursuing refinancing or purchasing a new home with his wife, despite having over 100,000 dollars in equity and actively working with a realtor;

    d. emotional distress, anxiety, frustration, and inconvenience; and

    e. time and effort spent monitoring his credit and attempting to correct the inaccuracy.

34. Defendant's conduct constitutes negligent and/or willful noncompliance with the FCRA, entitling Plaintiff to actual, statutory, and punitive damages, together with costs and reasonable attorney's fees. See 15 U.S.C. §§ 1681n, 1681o.

35. Defendant knew or recklessly disregarded its duties under the FCRA, yet failed to take timely corrective action after receiving notice from TransUnion and permitted false information to remain on Plaintiff's credit file beyond the statutory period. Defendant's conduct was willful in that it acted knowingly or in reckless disregard of Plaintiff's rights under the Fair Credit Reporting Act.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendant, and award:

    A. Award actual damages in an amount to be determined at trial; but believed to exceed $30,000;

    B. Award statutory damages as permitted by 15 U.S.C. § 1681n;

    C. Award punitive damages in an amount to be determined at trial;

    D. Award costs of this action and any other relief the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

/s/ Roosevelt E. Hunt, Jr.
Roosevelt E. Hunt, Jr.,
Plaintiff *pro se*
7329 E. Gabriel St.
Bel Aire, KS 67226

Email: RH717x@gmail.com
Phone: 316-221-0329

**\*\*CERTIFICATION RE: USE OF ARTIFICIAL INTELLIGENCE\*\***
 I certify that I have personally reviewed this filing, verified its accuracy, and that any AI assistance used was reviewed and corrected by me. No material inaccuracies from AI were included. /s/ Roosevelt E. Hunt, Jr.